UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ELGIN G. KING                                                                                    PETITIONER
ADC #088556

V.                                    NO. 5:18CV00307-DPM-JTR

WENDY KELLEY, Director,
Arkansas Department of Correction                                                    RESPONDENT

RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

I. Background

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Petitioner Elgin King ("King"). *Doc. 2*. Before addressing King's habeas claim, the Court will review the procedural history of the case in state court.

On May 6, 1998, a Pulaski County jury convicted King of first-degree murder and sentenced him, as a habitual offender, to sixty years in the Arkansas Department of Correction. *Doc. 8-15 at 13*.

King appealed his conviction to the Arkansas Supreme Court, where he argued his conviction should be reversed based on the trial court: (1) denying his motion for directed verdict based on insufficiency of the evidence; (2) refusing his motion to declare a witness an accomplice; and (3) admitting evidence of appellant's gang involvement. *King v. State*, 338 Ark. 591 (1999).

On September 23, 1999, the Arkansas Supreme Court affirmed King's conviction. In doing so, it ruled that: (1) King failed to preserve the issue of sufficiency of the evidence by not renewing his motion for directed verdict after the state's rebuttal testimony; (2) the law of the case precluded the Court from considering the issue of whether the witness in question was an accomplice; and (3) King opened the door to testimony that he was a gang member. *Id*.

On November 18, 1999, King filed a *pro se* Rule 37 Petition in the Pulaski County Circuit Court, raising various ineffective assistance of trial counsel claims. *Doc. 8-5 at 1*. On November 14, 2000, the trial court entered an order denying Rule 37 relief.

King appealed to the Arkansas Supreme Court. On February 14, 2002, the Court affirmed the trial court's denial of Rule 37 relief, and, on March 5, 2002, the Mandate issued. *Doc. 8-7*.

On December 6, 2018, King initiated this habeas action, and raised a single claim: His 1998 first degree murder conviction was based on insufficient evidence. *Doc. 2*.

On January 16, 2019, Respondent filed a Response, in which she argues that: (1) King's habeas claim is time-barred; (2) He has procedurally defaulted the claim; and (3) Under *Ashcroft v. Iqbal*, 556 U.S. 662, 677-680, 686 (2009), King's allegations are so vague and conclusory that he has not stated a claim for relief. *Doc. 8*. On February 25, 2019, King filed a Reply. *Doc. 12*.

For the reasons explained below, the Court concludes that King's habeas claim is time-barred. Accordingly, the Court need not address Respondent's other grounds for the dismissal of this action.

## II. Discussion

**A.    King's Habeas Claim Is Untimely.**

Under AEDPA,[1] a federal habeas petitioner must file his habeas Petition within one year of the date the state "judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996

2244(d)(1)(A). "When the State's highest court issues a decision on direct review, and review on certiorari is not sought, the judgment becomes final 90 days later, when the time for seeking certiorari in the United States Supreme Court expires." *Gonzalez v. Thaler*, 565 U.S. 134, 149 (2012).

The Arkansas Supreme Court issued its decision affirming King's murder conviction on September 23, 1999. King did not file a Petition for Writ of Certiorari with the United States Supreme Court. Instead, on November 18, 1999, he filed a Rule 37 Petition with the trial court. *Doc. 8-5*. This meant that, when his judgment of conviction became final, on December 23, 1999, AEDPA's one year limitations period was already tolled by King's "properly filed" Rule 37 Petition. 28 U.S.C. § 2244(d)(2); *Lawrence v. Florida*, 549 U.S. 327, 330-331 (2007) (state post-conviction application remains "pending" until state's highest court has issued its mandate or denied review); *Payne v. Kemna*, 441 F.3d 570, 572 (8th Cir. 2006) (under Missouri law, state post-conviction proceeding was "pending" for purposes of § 2244(d)(2) until the appellate court issued its mandate); Ark. Sup. Ct. R. 5-3(a) (in all cases, mandate will be issued when appellate decision becomes final).

The one year limitations period was tolled from December 23, 1999, through March 5, 2002, the date the Arkansas Supreme Court issued its Mandate affirming the trial court's denial of Rule 37 relief. Thus, King was required to initiate this

habeas action within one year from March 6, 2002, which meant the filing deadline was March 6, 2003.

King waited until December 6, 2018 to file this habeas action, which makes it time-barred unless he can establish an equitable basis for tolling or overriding the statute of limitations.[2]

## B. The "Actual Innocence" Exception Cannot Save King's Time-Barred Habeas Claim.

King asserts a gateway actual innocence claim in an effort to override the one year limitations period.[3] *Doc. 2 at 5*. In *McQuiggan v. Perkins*, 569 U.S. 383, 386 (2013), the Court explained that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to overcome the expiration of the statute of limitations. The Court cautioned, however, that "tenable actual-innocence gateway pleas are rare: [A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting

---

[2] On May 27, 2009, years after the March 6, 2003 deadline for initiating this federal habeas action, King filed a *state* habeas petition. *Doc. 8-8*. Thereafter, he filed other successive state habeas petitions on August 31, 2011, and February 10, 2012. *Docs. 8-10 and 8-11*. None of those state habeas petitions tolled the one year limitations period, under § 2244(d)(2), because it had already expired years earlier, on March 6, 2003. *Jackson v. Ault*, 452 F.3d 734, 735-36 (8th Cir. 2006) (the one year limitations period cannot be tolled after it has expired); *Curtiss v. Mount Pleasant Corr. Facility*, 338 F.3d 851, 853 (8th Cir. 2003) (same).

[3] Although King does not assert "equitable tolling", there is *nothing* in the record to suggest that, over the last sixteen years, King has been "pursuing his rights diligently," but "some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 645, 649 (2010).

reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995), and *House v. Bell*, 547 U.S. 518, 538 (2006)) (internal quotations omitted).

The actual innocence exception requires a habeas petitioner to come forward with "new reliable evidence" which was "not available at trial through the exercise of due diligence." *Schlup*, 513 U.S. at 324; *Kidd v. Norman*, 651 F.3d 947, 953 (8th Cir. 2011), cert. denied, 568 U.S. 838 (2012). The law is clear that, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316; *Nooner v. Hobbs*, 689 F.3d 921, 937 (8th Cir. 2012) (when a habeas petitioner fails to present new, reliable evidence of innocence, "it is unnecessary to conduct a further *Schlup* analysis."). Finally, to obtain review of his otherwise defaulted claim, "it is the petitioner's, not the court's, burden to *support* his allegations of actual innocence by *presenting* new reliable evidence of his innocence." *Weeks v. Bowersox*, 119 F.3d 1342, 1353 (quoting *Battle v. Delo*, 64 F.3d 347 (8th Cir. 1995)) (internal marks omitted).

King's habeas Petition offers *no new evidence* to support his actual innocence claim. *Doc. 2*. Instead, he has attached copies of the petition for writ of habeas corpus that he filed in state court, on May 27, 2009, and the "Motion to Retrieve Evidence

from the State's Crime Lab," which was also filed in the state habeas action. *Doc. 2 at 16-26*. In those state court filings, King argued that DNA and fingerprint testing on the rubber mask that was found in a field near the silo where the victim's body was discovered would show he was not "one of the killers" and was "not the guy behind the mask." *Id. at 18, 22*.[4] Suffice it to say, nothing in those documents comes close to establishing a gateway actual innocence claim sufficient to override the one year limitations period that now bars the Court from considering King's underlying habeas claim.

First, King has failed to provide any "new evidence" of his innocence. Instead, the content of the documents King relies on supports only *speculation* and *conjecture* about what DNA and fingerprint testing of the rubber mask *might* have yielded and

---

[4] King's conviction was based in large part on the testimony of Vernon Scott. At trial, Scott testified that, on September 30, 1993, he saw Elgin King and Kenneth Slocum on the street in the "Dixie Addition," a neighborhood in North Little Rock. *Doc. 8-15 at 92*. Slocum told Scott he would give him drugs if Scott would get Willie Simpkins to go to the "Hattison house" later that night so Slocum could talk to him. *Id*. Scott agreed. *Id*.

Approximately one hour after Scott and Simpkins arrived at the Hattison house, Kenneth Slocum and Elgin King "bust[ed] through the door," armed with handguns, "holler[ing] for everybody to get on the floor." *Id. at 95-96*. According to Scott, King was wearing a "rubber funny looking mask or something" and Slocum was wearing a ski mask and a bandana. *Id. at 99-100*. Scott recognized them by their clothing and by their voices. Slocum covered Simpkins's head and bound him with duct tape. *Id. at 100-101*. Once Simpkins's arms were taped behind his back, King exited the front door of the house and, a minute later, Slocum took Simpkins out the side door. *Id*. About six minutes later, Scott heard multiple gunshots coming from the field that borders the Dixie Addition. *Id*. A silo is located on the other side of the field. *Id. at 35*.

Simpkins was not seen again until October 4, 1993, when police found his body in the silo south of the Dixie Addition. *Id. at 34*. Simpkins had been shot to death. The autopsy report identified ten separate gunshot wound paths and recovered two different caliber bullets from the body. *Id. at 85-86*. On October 6, 1993, the police recovered a rubber mask in the field adjacent to the silo. *Id. at 53-54*.

how it *might* have been favorable to King. *Nooner*, 689 F.3d at 937 (when a habeas petitioner fails to present new, reliable evidence of innocence, "it is unnecessary to conduct a further *Schlup* analysis.").

Second, law enforcement officers found the rubber mask on October 6, 1993, six days after the murder. Thus, it was available and could have been tested for DNA and fingerprints prior to King's first trial, which began on April 10, 1995.[5] *Id.* at 934 ("[E]vidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence."). Accordingly, King has presented no "new evidence" of his alleged "actual innocence."

Finally, even if testing had been performed and it revealed that King's DNA and fingerprints were *not* on the mask, the Court cannot say that such evidence would have resulted in "no reasonable juror" voting to convict King. Scott testified that he saw King wearing a "rubber funny looking mask or something" when King and Slocum abducted and then killed the victim, Simpkins. *Doc. 8-15 at 99-100*. The police later found a rubber mask in the field, adjacent to the grain silo where

---

[5] In his first trial, King was convicted of first degree murder and sentenced to forty years. *See State v. Kenneth Slocum and Elgin King*, Pulaski County Circuit Court 60CR-93-2979 at https://caseinfo.aoc.arkansas.gov. On direct appeal, the Arkansas Supreme Court reversed King's conviction on the ground that the trial court erred in not instructing the jury to determine if Scott was an accomplice. *King v. State*, 323 Ark. 671 (1996).

King's second trial, which began on March 18, 1997, resulted in a mistrial. *See* Pulaski County Circuit Court 60CR-93-2979 at https://caseinfo.aoc.arkansas.gov.

In King's third trial, on May 5-6, 1998, he was again convicted of first degree murder, and sentenced to sixty years. *Doc. 8-15 at 13*. This is the conviction that King is collaterally attacking in this habeas action.

Simpkins's body was discovered. *Id. at 53-54*. Scott also testified that, when King and Slocum entered the house, King was carrying a handgun smaller than the one carried by Slocum. *Id. at 95-96, 100*. Six minutes after King and Slocum left the house with Simpkins, Scott testified that he heard multiple gunshots coming from the direction of the silo where Simpkins's body was later found. *Id. at 100-101*. Bullets fired from two different caliber weapons were recovered from Simpkins's body, suggesting two attackers. *Id. at 85-86*.

This strong evidence of King's guilt is not undermined, much less rebutted, by the speculative and equivocal content of the documents King has attached to his habeas papers. Thus, there are *no facts* to support King's claim that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Brownlow v. Grouse*, 66 F.3d 997, 999 (8th Cir. 1995) (quoting *Schlup*, 513 U.S. at 322); *see also Jennings v. United States*, 696 F.3d 759, 764 (8th Cir. 2012) ("Actual innocence means factual innocence, not mere legal insufficiency.") (internal quotations and alterations omitted); *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007) ("in non-capital cases the concept of actual innocence is easy to grasp, because it simply means the person didn't commit the crime.").

### III. Conclusion

King's habeas Petition is time-barred. Having failed to meet the demanding gateway actual innocence exception, there is no equitable basis for this Court to toll or override the one year statute of limitations, which expired well over a decade ago.

IT IS THEREFORE RECOMMENDED THAT the Petition for a Writ of Habeas Corpus (*Doc. 2*) be DISMISSED.

IT IS FURTHER RECOMMENDED that a Certificate of Appealability be DENIED. *See* 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

DATED this 4th day of April, 2019.

_____
UNITED STATES MAGISTRATE JUDGE